# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

**Bid Protest**
**Number 07-712C**
**Judge Margaret M. Sweeney**

**PRECISION IMAGES, LLC,**

**Plaintiff,**

**v.**

**THE UNITED STATES,**

**Defendant,**

**and**

**GE INSPECTION TECHNOLOGIES, LP,**

**Intervenor.**

## PLAINTIFF'S BRIEF IN SUPPORT OF CROSS-MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

**Cyrus E. Phillips, IV**
**1828 L Street, N.W., Suite 660**
**Washington, D.C. 20036-5112**
**Attorney of record for Plaintiff,**
**Precision Images, LLC.**

AGREED-UPON REDACTED COPY
MAY BE MADE PUBLIC

**October 19th, 2007**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii

QUESTIONS INVOLVED ........ 1

I. IS THIS AWARD THE RESULT OF A PROHIBITED PERFORMANCE/PRICE TRADEOFF SOURCE SELECTION PROCEDURE? ........ 1

II. DOES THIS AWARD PROVIDE THE BEST VALUE? ........ 1

STATEMENT OF THE CASE ........ 1-16

ARGUMENT ........ 16-20

I. THIS AWARD TO GE INSPECTION TECHNOLOGIES IS THE RESULT OF A PROHIBITED PERFORMANCE/PRICE TRADEOFF SOURCE SELECTION PROCEDURE. ........ 16-18

II. THIS AWARD CANNOT BE SUSTAINED AS PROVIDING THE BEST VALUE. ........ 18- 20

CONCLUSION ........ 20-21

CERTIFICATE OF SERVICE ........ 22

# TABLE OF AUTHORITIES

***STATUTES***

5 U.S.C. § 101 .......... 1

10 U.S.C. § 101(a)(8) .......... 1

10 U.S.C. § 2305(b)(4)(C) .......... 19

41 U.S.C. § 405(j)(2) .......... 17

***REGULATIONS***

Federal Acquisition Regulation 15.302 .......... 18

Federal Acquisition Regulation 15.305(a)(2)(iv) .......... 17

***CASES***

B-281958, B-281959, *Matter of National Aerospace Group, Inc.*, May 10, 1999, at 4,
*1999 U.S. Comp. Gen. LEXIS 74* .......... 18

*Erinys Iraq, Ltd. v. United States*,
Fed. Cl. No. 07-562C, September 14, 2007,
*2007 U.S. Claims LEXIS 287* .......... 19

*Marsh v. Oregon Natural Resources Council*,
490 U.S. 360 (1989) .......... 20

# PLAINTIFF'S BRIEF IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

## QUESTIONS INVOLVED

I. Is this Award the result of a prohibited Performance/Price Tradeoff source selection procedure?

II. Does this Award provide the Best Value?

## STATEMENT OF THE CASE

### PARTIES

Precision Images is a Florida corporation, a small business, and a distributor of commercial off-the-shelf lightweight, hand-held ultrasonic flaw detectors manufactured by STARMANS electronics, s.r.o. ("Spolecnost S Rucenim Omezenim," or Czech Limited Liability Company) in the Czech Republic. Statement of Facts, Number 1.

Defendant is the Department of the Air Force, Air Force Materiel Command, Warner Robins Air Logistics Center, Warner Robins, Georgia 31908-1611. The Department of the Air Force is a Military Department within the Department of Defense, 10 U.S.C. § 101(a)(8); the Department of Defense is an Executive Department of the United States, 5 U.S.C. § 101; and the Department of the

Air Force and its Air Force Materiel Command are instrumentalities of the United States. Statement of Facts, Number 2.

GE Inspection Technologies, LP, 50 Industrial Park Road, Lewistown, Pennsylvania 17044-9312 (GE Inspection Technologies) is a large business partnership whose common parent is the General Electric Company. Statement of Facts, Number 3.

THE ACQUISITION

Solicitation Number FA8533-07-R-11523 is a Solicitation for Competitive Proposals which promises an Award, an Indefinite-Delivery Requirements-type Contract for a base period of one year from date of Contract Award with four one-year option periods. The Solicitation is issued to satisfy Department of Defense inventory requirements for commercial off-the-shelf lightweight, handheld microprocessor-based ultrasonic flaw detectors. Up to seven-hundred commercial off-the-shelf lightweight, handheld ultrasonic flaw detectors may be ordered over the Contract term at firm fixed-prices. Testing and approval of a Pre-Production unit is required. Statement of Facts, Number 4.

MARKET RESEARCH

The Market Research required by Federal Acquisition Regulation 10.001(a) was completed by April 4th, 2007. In a "Market Research Report" of that date the Air Force Program Engineer explains that these commercial off-the-shelf lightweight, handheld ultrasonic flaw detectors are expected to be used as Department of Defense (DoD) Joint Services test equipment, including use

by the Department of the Navy, other military services, and other DoD organizations. The Air Force Program Engineer says that these are the critical performance requirements:

> Ultrasonic Flaw Detector available in the commercial market with design features that maximize reliability, maintainability, and ease of use with the smallest footprint available is highly desired. It is imperative that the unit shall have a selectable spike/excitation and square wave pulser with adjustable voltage from 150 V to 300 V, (minimum range) into a 100 ohm load. It is expected to be deployed and operated frequently at stateside and overseas military locations of uncontrolled and rough environment. It will mostly be used in hangars and flight lines inspecting various types of military aircraft and weapon systems. Performance requirements of this tester specified can be acquired in the commercial market sector.

Statement of Facts, Number 5.

This is the Air Force Program Engineer's account of development of the performance requirements and salient characteristics for these commercial off-the-shelf lightweight, handheld ultrasonic flaw detectors:

> [Air Force Engineers] attend, participate, and expend an all year round effort to track not just existing ultrasonic flaw detector technology but all nondestructive testing equipment already available in the commercial market and also those still under research and development. Part of this effort is by attending nondestructive Quality Testing Shows and Nondestructive Testing Working Groups which are held most often in conjunction with major nondestructive testing conferences and exhibits. The most recently attended were the American Society for Nondestructive Inspection (ASNT) at Houston, TX, DoD Defense Working Group on NDT at Albuquerque, NM, NAVAIR NDI Conference at Norfolk, VA, and the AF NDI Conference at San Antonio, TX. However, the total market research undertaking is an all year round effort that includes countless hours monitoring and watching manufacturers and vendors display how their equipment and products work and even those that are still under development. This is done through attendance and participation in hundreds of NDI equipment and products' actual demonstrations, validations, verifications, and all year round testing, all over the country and sometimes overseas.

> Aerospace nondestructive testing market in the US is a small market in which the US Air Force is the biggest customer. This Market Research was developed using the effort described in the paragraph above and with acquired data and information obtained from the knowledge and experience of engineers not just in the AF, but also in the DoD, civilian aerospace industry, and from scientists and engineers of actual manufacturers and vendors of almost all types of nondestructive testing product and equipment—not just in some specific nondestructive testing but in all types of existing applications. The Ultrasonic Flaw Detector PD that will be used in this Market Research has AF wide stringent nondestructive testing requirement applications and equipment commercially available presently in the NDI market that could satisfy these requirements is most limited.
>
> In addition to the above, the following market research techniques were utilized: on line and Thomas Register searches were accomplished looking for prospective sources, internet searches and numerous phone calls and personal contacts were made to numerous vendors and manufacturers, scientists and engineers throughout the US and overseas and numerous NDI equipment and products informational interchange meetings were held.

Statement of Facts, Number 6.

The Air Force Program Engineer's Market Research reveals that commercial off-the-shelf lightweight, hand-held ultrasonic flaw detectors are not in short supply:

> Several brands of ultrasonic flaw detectors are widely available in the commercial nondestructive testing inspection market and have been available in the past several years. The ultrasonic flaw detector is [a] non developmental item.

This same Market Research likewise shows that it is likely that there will be further development and deployment of commercial off-the-shelf lightweight, hand-held ultrasonic flaw detectors:

> Ultrasonic flaw detector technology is aggressively employed and has been widely used in the past several years not only in the aerospace but also in other industries.
>
> This technology could be targeted for specific applications therefore availability if vendors could be increased.
>
> Technology is anticipated to continuously utilize and acceptance is expected to grow further in the next few years and advancement of the applicable technology is expected.

Statement of Facts, Number 7.

The Air Force Program Engineer explains in his Market Research Report that this will not be a follow-on Contract even though there have been previous Awards for commercial off-the-shelf light-weight, hand-held ultrasonic flaw detectors. Because there are "no widely used common document-ed reliable testing plans available to users of ultrasonic flaw detectors," the Air Force Program Engineer concludes that testing and approval of a Pre-Production unit is needed. Statement of Facts, Number 8.

<u>PROCUREMENT HISTORY</u>

The Air Force has no procurement history (and thus no past performance records) of requirements for hundreds of commercial off-the-shelf lightweight, hand-held ultrasonic flaw detectors. The performance history available to the Air Force shows 2 prior Awards in 2004 and 2005 for a total of 17 commercial off-the-shelf lightweight, hand-held ultrasonic flaw detectors. An Award in 1992 for a single commercial off-the-shelf lightweight, hand-held ultrasonic flaw detector. And an Award in 1989 for 5 commercial off-the-shelf lightweight, hand-held ultrasonic flaw detectors. Statement of Facts, Number 9.

On May 24th, 2007 a previous Air Force supplier of commercial off-the-shelf lightweight, hand-held ultrasonic flaw detectors wrote:

> we can not meet or even rationalize the requirement of 160 units per year in a similar or like kind contract. We have been manufacturing Ultrasonic Flaw detectors for almost 20

> years and have sold to the military in the 90s as well but, our orders are typically 1-5 at a time therefore we can't get to the 160/yr or per contract.

Statement of Facts, Number 10.

THE ACQUISITION

Solicitation Number FA8533-07-R-11523 was issued on April 20th, 2007. Issued with the Solicitation is a 7-page Product Description developed by the Air Force's Program Engineer. This Product Description sets out the requirements for, and the salient characteristics of, the required commercial off-the-shelf lightweight, hand-held ultrasonic flaw detectors. Statement of Facts, Number 11.

In response to a request from a prospective Offeror of the required commercial off-the-shelf lightweight, hand-held ultrasonic flaw detectors for deviations from the requirements stated in the Product Description and a subsequent question from the Air Force Contracting Officer as to whether or not the requested deviations were valid, the Air Force Program Engineer declined on May 1st, 2007 to allow any changes:

> I am pretty sure that from his point of view as a small business distributor of a large business equipment manufacturer, his issues are valid. However, we put together ultrasonic nondestructive inspection requirements from a big number of engineers and technicians not just in the AF but also in the Navy (who are users and will be users of this ultrasonic flaw detector) in our PD, and if you are asking me, our requirements are a lot more valid than his arguments.

Statement of Facts, Number 12.

The Purchase Description issued with the Solicitation on April 20th, 2007 included a requirement for a pulse width range from 30 nanoseconds minimum to 1,000 nanoseconds maximum. On May

3rd, 2007 GE Inspection Technologies asked the Air Force "[h]ow important is or what is the application for the lower end requirement of 30ns?" The Air Force Program Engineer responded on May 8th, 2007 that "[t]he pulse width/shape of 30ns delivers the frequency suitable for AF ultrasonic nondestructive inspection requirements." This question, and the Air Force response, was included in the second set of Questions and Answers made available to all Offerors on May 8th, 2007. Statement of Facts, Number 13.

THE EVALUATION PLAN

The Solicitation announces an Award to be made utilizing a Performance/Price Tradeoff source selection procedure with Performance being considered significantly more important than Price. The Solicitation says that Performance review will assess "the confidence in the offeror's ability to successfully accomplish the proposed effort based on the offeror's demonstrated present and past work record," and that Performance review will be generic, i.e., the Performance review will "evaluate the offeror's demonstrated record of contract compliance in supplying products and services that meet users' needs, including cost and schedule." Statement of Facts, Number 14.

But the Solicitation also sets out very specific criteria for determining the relevance of Performance. Specifically, the only Performance deemed "Relevant" by the Solicitation is the manufacture of microprocessor-based inspection equipment and this Performance can be "Very Relevant" if it involves commercial off-the-shelf lightweight, hand-held ultrasonic flaw detectors with

color displays, or “Relevant” if it involves ultrasonic inspection equipment, or “Somewhat Relevant” if it involves microprocessor-based inspection equipment with a display, or “Not Relevant” if Performance does not involve “any significant aspects of the above definitions.” The Solicitation goes on to explain that these relevancy ratings include, among other things, reviews of the total quantity produced, of the quantity produced per month, and of the program dollar value. Statement of Facts, Number 15.

Finally, the Solicitation provides for an overall confidence assessment rating. Overall confidence in Performance can be rated as “High Confidence” or as “Significant Confidence” or as “Satisfactory Confidence” or as “Unknown Confidence” or as “Little Confidence” or as “No Confidence.” Save for the “Unknown Confidence” overall confidence assessment rating the other overall confidence assessment ratings for Performance are self-explanatory. Statement of Facts, Number 16.

The Solicitation explicitly provides for the “Unknown Confidence” rating on an overall confidence assessment for Performance when an Offeror has no identifiable “relevant” Performance. The “Unknown Confidence” rating provided by the Solicitation is there described as implementing the requirement of Federal Acquisition Regulation 15.305(a)(2)(iv). This is what the Solicitation promises:

> If an offeror, or the proposed key employees of the offeror, do not have a past performance history deemed relevant to this solicitation, the offeror will receive an unknown confidence rating. The unknown confidence rating will be considered in the overall assessment for a best value decision.

Statement of Facts, Number 17.

PRECISION IMAGES' COMPETITIVE PROPOSAL

On May 21st, 2007 Precision Images provided to the Air Force by an electronic message its offer on the Solicitation. Precision Images there proposed a STARMANS electronics, s.r.o. commercial off-the-shelf lightweight, hand-held ultrasonic flaw detector. Precision Images set out some few details of the STARMANS electronics, s.r.o. commercial off-the-shelf lightweight, hand-held ultrasonic flaw detector that Precision Images is proposing, and Precision Images provided as an attachment a marked-up version of the 7-page Product Description. This marked-up version of the 7-page Product Description presents to the Air Force Contracting Officer specific affirmations by Precision Images that the STARMANS electronics, s.r.o. commercial off-the-shelf lightweight, hand-held ultrasonic flaw detector meets each requirement and salient characteristic set out in the 7-page Product Description for the required commercial off-the-shelf lightweight, hand-held ultrasonic flaw detector. Later that same day the Air Force Contracting Officer requested that Precision Images instead submit a Competitive Proposal in the format required by the Solicitation. Statement of Facts, Number 18.

Precision Images submitted its Competitive Proposal on May 23rd, 2007. The Solicitation requires that each Competitive Proposal is submitted with a Cover Letter "delineating any exceptions taken to the RFP terms and conditions." While Precision Images' Cover Letter takes no exceptions to the Solicitation or to the 7-page Product Description, Precision Images there explains:

**Protected Information Has Been Redacted**

> I would also like to bring to your attention that the relevancy of the Present/Past Performance has historically been for other products. The color UT unit offered in FA8533-07-R-11523 is a new product for us.

Statement of Facts, Number 19.

GE INSPECTION TECHNOLOGIES' COMPETITIVE PROPOSAL

On May 16th, 2007 GE Inspection Technologies took an exception to the requirement in the 7-page Product Description for a pulse width range from 30 nanoseconds minimum to 1,000 nanoseconds maximum. GE Inspection Technologies is offering a commercial off-the-shelf lightweight, hand-held ultrasonic flaw detector with a narrower pulse width range, this one from 50 nanoseconds minimum to 1,000 nanoseconds maximum. The Air Force Program Engineer had previously affirmed that the pulse width range set out in the 7-page Product Description was the pulse width range most suitable for Air Force ultrasonic nondestructive inspection requirements. Now GE Inspection Technologies asserted that the pulse width range available with GE Inspection Technologies' offered commercial off-the-shelf lightweight, hand-held ultrasonic flaw detector is the "range of pulser width adjustment [which] allows for optimum performance for the transducers in this specification." Statement of Facts, Number 20.

On May 30th, 2007 the Air Force Program Engineer recommended that GE Inspection Technologies' exception to the pulse width requirement be granted. On July 13th, 2007 the Air Force Contracting Officer issued Amendment Number 0003 to the Solicitation announcing that the required pulse width adjustment range is narrowed from a requirement for a pulse width range

from 30 nanoseconds minimum to 1,000 nanoseconds maximum to a requirement for a pulse width range from 50 nanoseconds minimum to 1,000 nanoseconds maximum. Statement of Facts, Number 21.

## THE AWARD TO GE INSPECTION TECHNOLOGIES

### INITIAL COMPETITIVE PROPOSALS AND DISCUSSIONS

Three initial Competitive Proposals were received on May 24th, 2007. Upon review of these initial Competitive Proposals the Air Force Program Engineer told the Air Force Contracting Officer that the hand-held ultrasonic flaw detectors proposed "satisfy the requirements of our PD." Statement of Facts, Number 22.

Responses by DoD activities for comment on Precision Images' past Performance were all favorable. But these past Performances by Precision Images were for the supply of film. Statement of Facts, Number 23.

The relevancy of Precision Images' Performance is rated by the Air Force Performance Confidence Assessment Group as "Not Relevant." The Air Force Performance Confidence Assessment Group's overall confidence assessment in Precision Images' Performance was then "Unknown Confidence." Per the Air Force Performance Confidence Assessment Group this is the result only of Precision Images' status as a small business distributor of commercial off-the-shelf lightweight, hand-held ultrasonic flaw detectors:

[redacted]

**Protected Information Has Been Redacted**

Statement of Facts, Number 24.

The Air Force received no responses regarding the Performance of the Un-named third Offeror. The Air Force Performance Confidence Assessment Group's overall confidence assessment in the Performance of this Un-named third Offeror is "Satisfactory Confidence." This results because the Air Force Performance Confidence Assessment Group has concluded that the past Performances of this Un-named third Offeror are neither "Very Relevant" nor "Relevant." Statement of Facts, Number 25.

The Air Force Performance Confidence Assessment Group's overall confidence assessment in the Performance of GE Inspection Technologies is "Satisfactory Confidence." This results because the Air Force Performance Confidence Assessment Group has concluded that the past Performances of GE Inspection Technologies are only "Somewhat Relevant." Statement of Facts, Number 26.

During Discussions on July 13, 2007 the Air Force Contracting Officer told Precision Images that the Air Force's overall confidence assessment of the Performance of Precision Images was as follows:

> The PCAG [Performance Confidence Assessment Group] has assessed an **unknown confidence** level that the offeror will successfully perform the Ultrasonic Flaw Detector program because the efforts involved little or none of the magnitude of work and complexities that this solicitation requires pursuant to the definitions of relevancy provided in the RFP.

Statement of Facts, Number 27.

The Air Force's Performance Confidence Assessment Group made its final confidence assessment of the Performance of Precision Images on August 30th, 2007. The Air Force's Performance

Confidence Assessment Group there considered Precision Images' responses to Discussions and the Air Force's Performance Confidence Assessment Group concluded that Precision Images has properly responded to all Discussion questions concerning Precision Images' Performance. Statement of Facts, Number 28.

But even after Precision Images' responses to Discussions there is still no Performance by Precision Images deemed "relevant" by the Solicitation. Precision Images is a distributor, not a manufacturer:

[redacted]

Statement of Facts, Number 29.

Nonetheless, on August 30th, 2007 the Air Force Performance Confidence Assessment Group changed its overall confidence assessment of the Performance of Precision Images from "Unknown Confidence" to "Little Confidence." For this change in the overall confidence assessment of the Performance of Precision Images from "Unknown Confidence" to "Little Confidence" there must, as required by the Solicitation, have been identifiable "relevant" Performance by Precision Images. But there is no such identifiable "relevant" Performance by Precision Images, either as submitted by Precision Images with its initial Competitive Proposal, or as submitted by Precision Images in responses to Discussions:

[redacted]

Statement of Facts, Number 30.

PRICE EVALUATION

After receipt of Final Proposal Revisions on September 12th, 2007 this is the total proposed Price for each of the three Offerors, and this over the proposed Contract term of five years:

| | |
|---|---|
| Un-named Offeror | [redacted] |
| GE Inspection Technologies | $3,867,120 |
| Precision Images | [redacted] |

Statement of Facts, Number 31.

THE AWARD DECISION

The Air Force Contracting Officer made her Best Value source selection on September 26th, 2007. Statement of Facts, Number 31.

The Air Force Contracting Officer's Source Selection Decision Document recognizes the change from "Unknown Confidence" to "Little Confidence" made by the Air Force Performance Confidence Assessment Group in its overall confidence assessment of the Performance of Precision Images. But the Air Force Contracting Officer's Source Selection Decision Document does not itself offer any justification for such a change in the overall confidence assessment of the Performance of Precision Images and the Air Force Contracting Officer's Source Selection Decision Document itself sets out

no identifiable "relevant" Performance by Precision Images on which this change in the overall confidence assessment of the Performance of Precision Images may be based. Statement of Facts, Number 32.

This is the Air Force Contracting Officer's rationale for her Best Value Award to GE Inspection Technologies:

[redacted]

Statement of Facts, Number 34.

The Air Force Program Engineer has determined that the all of the offered commercial off-the-shelf lightweight, hand-held ultrasonic flaw detectors meet the requirements for, and the salient characteristics of, the commercial off-the-shelf lightweight, hand-held ultrasonic flaw detectors set out in the Air Force's 7-page Product Description, this as modified to suit GE Inspection

Technologies. But nowhere in the Air Force Contracting Officer's Source Selection Decision Document is there recognition of the [redacted] price premium that is paid with the Best Value Award to GE Inspection Technologies. Statement of Facts, Number 35.

In the Air Force Contracting Officer's Source Selection Decision Document there is no consideration of an overall confidence assessment of the Performance of Precision Images as one of "Unknown Confidence." Statement of Facts, Number 36.

## ARGUMENT

### I. This Award to GE Inspection Technologies is the Result of a Prohibited Performance/Price Tradeoff Source Selection Procedure.

Simply put, because Precision Images has no identifiable "relevant" Performance, Precision Images' Performance should have received an overall confidence assessment of "Unknown Confidence."

But that is not what happened here. Instead, Precision Images' Performance received an overall confidence assessment of "Little Confidence" and it was on this basis that the Air Force Contracting Officer traded-off Precision Images' Performance against Precision Images' considerable Price advantage of [redacted]

The overall confidence assessment of Precision Images' Performance as one of "Little Confidence" is arbitrary and capricious because this overall confidence assessment is not supported by the Administrative Record.

The overall confidence assessment of the Performance of Precision Images as one of "Little Confidence" must, as required by the Solicitation, be supported by identifiable "relevant" Performance by Precision Images. But there is no such identifiable "relevant" Performance by Precision Images, either as submitted by Precision Images with its initial Competitive Proposal, or as submitted by Precision Images in responses to Discussions, or as found by the Air Force Performance Confidence Assessment Group.

The Air Force Contracting Officer's Source Selection Decision Document does not itself offer any justification for an overall confidence assessment of the Performance of Precision Images as one of "Little Confidence" and the Air Force Contracting Officer's Source Selection Decision Document itself sets out no identifiable "relevant" Performance by Precision Images on which such an overall confidence assessment of the Performance of Precision Images may be based.

Because the Air Force Contracting Officer trades-off Precision Images' overall confidence assessment of the Performance of Precision Images as one of "Little Confidence" against the [redacted] Price premium that is paid with the Best Value Award to GE Inspection Technologies, the Award to GE Inspection Technologies is made utilizing a Performance/Price Tradeoff source selection procedure which violates 41 U.S.C. § 405(j)(2) and Federal Acquisition Regulation 15.305(a)(2)-(iv). The Performance of Precision Images, an Offeror with respect to whom there is no information on the "relevant" Performance that is defined by the Solicitation, is unlawfully traded-off by the Air Force Contracting Officer against the substantially higher Price of GE Inspection Tech-

nologies for a commercial off-the-shelf lightweight, hand-held ultrasonic flaw detector of lesser quality (insofar as the Air Force's initial 7-page Product Description is an appropriate definition of "quality" for the purposes of the Air Force).

Here is precedent precisely on point:

> There is nothing in the record to show that the contracting officer performed a comparative assessment of the vendors. The contracting officer merely checked a box on a form indicating that National was not selected because its 999.9 ABVM score was based on insufficient information and, therefore, was not a true indicator of its capabilities. Nor is there any indication that the contracting officer performed a tradeoff that considered the significant price premium in ordering from Tara, or that the contracting officer considered in her decision that National quoted a significantly shorter delivery time and confirmed that the metal sheets were in stock. Unlike in *Phillips*, there is no indication here that the item was in backlog or high demand status or that timely delivery was critical and worth the price premium to avoid the risk of using a vendor with no performance history. We conclude that the contracting officer failed to make a meaningful best value determination consistent with the SPA to justify paying a significant premium to Tara. As a result, DLA's decision was tantamount to rejecting National's quotation based on its lack of past performance history, which is inconsistent with 41 U.S.C. § 405(j)-(2), FAR § 15.305(a)(2), and the clauses which implement the ABVM program, as discussed in the *Phillips* decision. We therefore sustain National's protest of the order to Tara under RFQ-A426.

B-281958, B-281959, *Matter of National Aerospace Group, Inc.*, May 10, 1999, at 4, *1999 U.S. Comp. Gen. LEXIS 74*, *8-*9.

## II. This Award Cannot Be Sustained as Providing the Best Value.

Federal Acquisition Regulation 15.302 explains that the goal of any source selection is "[selection of] the proposal that represents the best value." The mandatory requirement is that an Award on Competitive Proposals must be made "to the responsible source whose proposal is most advanta-

geous to the United States, considering only cost or price and the other factors included in the solicitation." 10 U.S.C. § 2305(b)(4)(C).

Is this Administrative Record support for the proposition that the Award to GE Inspection Technologies, an Award which is made at a substantial Price premium for a commercial off-the-shelf item of lesser quality, provides the Best Value? No, this Administrative Record does not support such a proposition.

The problem here is the Performance/Price Tradeoff source selection procedure itself. Recall that an Award on Best Value is designed to take into account more than just the respective Prices which are offered. *Erinys Iraq, Ltd. v. United States*, Fed. Cl. No. 07-562C, September 14, 2007, *2007 U.S. Claims LEXIS 287, *23.*

And here the "more" that is to be taken into account is Performance.

But while this Solicitation provides an elaborate scheme to rank Performance ("Very Relevant," "Relevant," "Somewhat Relevant," or "Not Relevant") and then to assess overall confidence in "relevant" Performance ("High Confidence," "Significant Confidence," "Satisfactory Confidence," "Unknown Confidence," "Little Confidence," or "No Confidence") the Air Force's own Market Research and the Air Force's own procurement history both demonstrate that no Offeror could possibly have had "Very Relevant" Performance or have received an overall confidence assessment of "High Confidence."

Why?

Because these commercial off-the-shelf lightweight, hand-held microprocessor-based ultrasonic flaw detectors are only now moving into the marketplace in substantial numbers. And because these devices are clearly the subject of further development and deployment in the marketplace for new applications.

This is why the two manufacturers of commercial off-the-shelf lightweight, hand-held microprocessor-based ultrasonic flaw detectors that are here competing against Precision Images, a distributor, have received overall confidence assessments no better than "Satisfactory Confidence." And why the Air Force has concocted a trade-off of these indistinguishable confidence assessments against the Air Force's unlawful confidence assessment of "Little Confidence" for Precision Images and the substantial Price advantage of Precision Images.

This Air Force Contracting Officer's Award is a "clear error of judgment." *Marsh v. Oregon Natural Resources Council*, 490 U.S. 360, 378 (1989).

## CONCLUSION

For all of the reasons set forth in the foregoing Brief in Support of Plaintiff's Cross-Motion for Judgment on the Administrative Record, Precision Images respectfully requests that the Court enter Judgment for Precision Images on this Administrative Record, RCFC 52.1(b), together with: (1) a Declaration that the Award to GE Inspection Technologies of Contract Number FA8533-07-D-0011 lacks a rational basis and is unreasonable or irrational, and thus arbitrary and

capricious; (2) a Declaration that the Air Force Contracting Officer's Award is arbitrary and capricious, unlawful, and in violation of applicable procurement Statute and Regulations; (3) a Declaration that Precision Images is entitled to equitable relief, and money damages, for the Defendant's breach of the implied-in-fact Contract of good faith, fair dealing, and honest consideration that the Department of the Air Force and its Air Force Materiel Command entered into with Precision Images when the Competition under Solicitation Number FA8533-07-R-11523 commenced; (4) a Permanent Injunction allowing Defendant's Air Force Contracting Officer to make a proper Contracting Officer's Best Value, Trade-off Award Decision; and (5) such further and other relief as the Court may deem just and proper.

Respectfully submitted,

/s/ Cyrus E. Phillips, IV

Cyrus E. Phillips, IV

District of Columbia Bar Number 456500,
Virginia State Bar Number 03135

October 19th, 2007

1828 L Street, N.W., Suite 660
Washington, D.C. 20036-5112

Telephone: (202) 466-7008
Facsimile: (202) 466-7009
Electronic Mail: lawyer@procurement-lawyer.com

Attorney of record for Plaintiff,
Precision Images, LLC.

**Protected Information Has Been Redacted**

## CERTIFICATE OF SERVICE

I hereby certify, under penalty of perjury, that on Friday, October 19th, 2007 a true and complete copy of this Plaintiff's Brief in Support of Plaintiff's Cross-Motion for Judgment on the Administrative Record was filed electronically via the Court's Electronic Case Filing System, through which notice of this filing will be sent to:

Joseph E. Ashman, Esq.

Electronic Mail: Joseph.Ashman@usdoj.gov

Attorney of record for Defendant,
Department of the Air Force, Air Force
Materiel Command.

I also certify, under penalty of perjury, that on Friday, October 19th, 2007 a true and complete copy of this Plaintiff's Brief in Support of Plaintiff's Cross-Motion for Judgment on the Administrative Record was filed electronically via the Court's Electronic Case Filing System, through which notice of this filing will be sent to:

David A. Churchill, Esq.

Electronic Mail: dchurchill@jenner.com

Attorney of record for Intervenor,
GE Inspection Technologies, LP.

/s/ Cyrus E. Phillips, IV

______________________________
Cyrus E. Phillips, IV