# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

**Bid Protest**
**Number 07-712C**
**Judge Margaret M. Sweeney**

**PRECISION IMAGES, LLC,**

**Plaintiff,**

**v.**

**THE UNITED STATES,**

**Defendant,**

**and**

**GE INSPECTION TECHNOLOGIES, LP,**

**Intervenor.**

## PLAINTIFF'S BRIEF IN REPLY TO RESPONSE TO CROSS-MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

**Cyrus E. Phillips, IV**
**1828 L Street, N.W., Suite 660**
**Washington, D.C. 20036-5112**
**Attorney of record for Plaintiff,**
**Precision Images, LLC.**

AGREED-UPON REDACTED COPY
MAY BE MADE PUBLIC

**October 29th, 2007**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii

ARGUMENT ........ 1-11

I. THE AIR FORCE UNLAWFULLY DISREGARDS PRICE ........ 1-8

II. A RE-OPENED COMPETITION WOULD BE AN IMPROPER REMEDY ........ 8-11

CERTIFICATE OF SERVICE ........ 12

# TABLE OF AUTHORITIES

## ***STATUTES***

5 U.S.C. § 706(2)(A). . . . . 9

10 U.S.C. § 2305(b)(4)(C). . . . . 9

41 U.S.C. § 405(j)(2). . . . . 9

## ***REGULATIONS***

Federal Acquisition Regulation 15.305(a)(2)(iv). . . . . 9

## ***CASES***

B-298697, *Matter of HoveCo*, November 14th, 2006,
*2006 U.S. Comp. Gen. LEXIS 189*. . . . . 6-7

*Grumman Data Systems Corp.*, GSBCA No. 11635-P,
March 19th, 1992, *1992 GSBCA LEXIS 142*. . . . . 4

*Impresa Construzioni Geom. Domenico Garufi v. United States*,
238 F.3d 1324 (Fed. Cir. 2001). . . . . 7-8

*Impresa Construzioni Geom. Domenico Garufi v. United States*,
52 Fed. Cl. 421 (2002). . . . . 7-8

*Marine Hydraulics International, Inc. v. United States*,
43 Fed. Cl. 664 (1999). . . . . 4-5

*Southern Foods, Inc. v. United States*,
76 Fed. Cl. 769 (2006). . . . . 5

*Sperry Corp.; Sysorex Information Systems, Inc.;*
*M/A-Com Information Systems, Inc.*, GSBCA Nos. 8208-P,
8210-P, & 8266-P, January 23rd, 1986,
*1986 GSBCA LEXIS 711*. . . . . 10

PLAINTIFF'S BRIEF IN REPLY TO RESPONSE TO
CROSS-MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

## ARGUMENT

### I. The Air Force Unlawfully Disregards Price.

The Air Force argues that Precision Images cannot have been prejudiced when Precision Images received an *improper* overall Performance confidence assessment of "Little Confidence"—even had Precision Images received a *proper* overall Performance confidence assessment of "Unknown Confidence" (and Precision Images' Performance did not receive such a proper overall Performance confidence assessment) the Air Force Contracting Officer's Best Value Trade-Off decision to pay GE Inspection Technologies' Price premium of [redacted], a Price premium of some [redacted] percent over the proposed Contract term of five years, "*would remain eminently reasonable*." Defendant's Brief in Support of Defendant's Motion for Judgment upon the Administrative Record, October 19th, 2007, at 24 (Emphasis added).

The Air Force repeats this theme in its Response to Precision Images' Cross-Motion for Judgment on the Administrative Record:

> Nowhere in Precision's Brief is there an explanation of why, based on the facts of this procurement as set forth in the administrative record, Precision would have had a substantial chance of receiving the contract had it received an "Unknown Confidence" performance assessment rather than a "Little Confidence" assessment.

**Protected Information Has Been Redacted**

Defendant's Response in Support of its Motion for Judgment upon the Administrative Record, October 24th, 2007, at 7.

The Air Force concedes that each of the three commercial off-the-shelf handheld, lightweight microprocessor-based ultrasonic flaw detectors which are here offered meets the performance requirements and salient characteristics set out in the Air Force's Product Description. And now before the Air Force Contracting Officer are three Competitive Proposals, Competitive Proposals from two manufacturers of commercial off-the-shelf handheld, lightweight microprocessor-based ultrasonic flaw detectors and a third Competitive Proposal from a distributor for yet another manufacturer of commercial off-the-shelf handheld, lightweight microprocessor-based ultrasonic flaw detectors.

The Solicitation under which the Air Force has received these three Competitive Proposals provides an elaborate scheme for the Air Force to rank "relevant" Performance ("Very Relevant," "Relevant," "Somewhat Relevant," or "Not Relevant") and then for the Air Force to assess overall confidence in "relevant" Performance ("High Confidence," "Significant Confidence," "Satisfactory Confidence," "Unknown Confidence," "Little Confidence," or "No Confidence"). And because only "relevant" Performance will be considered by the Air Force (only Performance involving manufacture of microprocessor-based inspection equipment with a display), it is only manufacturers of commercial off-the-shelf handheld, lightweight microprocessor-based ultrasonic flaw detectors, not distributors, who may receive from the Air Force overall Performance confidence assessments of "Satisfactory Confidence" or better.

Yet the two manufacturers of commercial off-the-shelf handheld, lightweight microprocessor-based ultrasonic flaw detectors whose Competitive Proposals are now before the Air Force have each received overall Performance confidence assessments no better than “Satisfactory Confidence.” Why? Because the commercial off-the-shelf handheld, lightweight microprocessor-based ultrasonic flaw detectors here required are, by the Air Force’s own admissions, only now moving into the marketplace in substantial numbers and because these devices, again by the Air Force’s own admissions, are themselves the subject of further, rapid development.

Precision Images, the only distributor here, can under the clear terms of this Solicitation receive from the Air Force an overall Performance confidence assessment no better than “Unknown Confidence.” (Precision Images is admittedly not a manufacturer of commercial off-the-shelf handheld, lightweight microprocessor-based ultrasonic flaw detectors.)

Now the Air Force confesses with the renewed standing argument in its Response that not one Offeror with an Air Force overall Performance confidence assessment not better than an Air Force overall Performance confidence assessment of “Unknown Confidence,” i.e., no distributor, will receive the Award no matter what Price premium the Air Force might agree to pay to a manufacturer of commercial off-the-shelf handheld, lightweight microprocessor-based ultrasonic flaw detectors. Manufacturers, mind you, who themselves will not achieve any differentiation in Air Force overall Performance confidence assessments because no manufacturer, by reason of this new and rapidly developing product required by the Air Force, can have a degree of “relevant” Performance better than

any other manufacturer of commercial off-the-shelf handheld, lightweight microprocessor-based ultrasonic flaw detectors.

In essence, the Air Force is telling this Court that Price makes no difference, that a Best Value Trade-Off is gratuitous, and in fact is but a meaningless gesture. This is unlawful.

Consider *Marine Hydraulics International, Inc. v. United States*, 43 Fed. Cl. 664 (1999). At issue there was a Best Value Trade-Off on a repair and SHIPALTS (Ship Alteration designs) Contract for one of the Navy's fast frigates. The Solicitation had announced that Performance was more important that Price, and while one of those Offerors had a "slight edge" on Performance, the other Offeror (just across the Elizabeth River) had a lower price, 2/10s of one percent lower. So an Advisory Board decided that saving $5,300 on a $2,345,974 Contract was the Best Value. *Id.*, at 668.

The Contracting Officer thought otherwise, and he decided that "the additional costs of 5200 (sic) [were] worth the additional rating [on Performance]." *Id.*

The *Marine Hydraulics* Court was clearly mindful of a decision of the General Services Administration Board of Contract Appeals, *Grumman Data Systems Corp.*, GSBCA No. 11635-P, March 19th, 1992, *1992 GSBCA LEXIS 142,*40,* wherein the General Services Administration Board of Contract Appeals set aside an Award made at a 59 percent Price premium, this because the Best Value Trade-Off which preceded that Award was made without recognition of the specific Price premium and without recognition of just what would be gained by paying such a Price premium.

**Protected Information Has Been Redacted**

Contrariwise, in the *Marine Hydraulics* Best Value Trade-Off there was recognition of the specific Price premium and just what would be gained. This, the Court held, was sufficient:

> Here, the PCO knew the exact amount of the trade-off and exactly what he was getting for the money. In fact, his focus was directly on the trade-off. *Nor do any of MHI's other authorities suggest that where, as here, the Source Selection authority has specifically considered the exact dollar value of the price difference and the precise technical strength to be obtained, the Source Selection Authority has acted arbitrarily or capriciously.*

*Id*., at 675 (Emphasis added).

So too this Court's recent decision in *Southern Foods, Inc. v. United States*, 76 Fed. Cl. 769 (2007). There this Court had set aside a previous Award because this previous Award was based on a change in technical ratings for which no rationale was provided. *Id*., at 773. A new Contracting Officer made a new Best Value Trade-Off, and this time this Court affirmed:

> The new contracting officer's rationale for awarding the contract to USF is reasonable and in accordance with the criteria set forth in the RFP. She eliminated the division within color ratings, so that it is clear USF's technical and management proposals were acceptable. *She made it plain that the dollar difference between USF and Sysco was * * * for the ten-year contract term.*[11] She refused to take account of USF's late-filed materials. In short, the court has no basis for quibbling with her independent judgment that, given the importance of price, the award should go to USF rather than either Sysco or Southern Foods.

*Id*., at 779 (Emphasis added).

Compare the Best Value Trade-Off here with these two Best Value Trade-Offs formerly before this Court. Here the Air Force Contracting Officer nowhere affirmatively recognizes the dollar difference between the Precision Images Competitive Proposal and the GE Inspection Technologies Competitive Proposal. Here the Air Force Contracting Officer identifies no precise advantages which

**Protected Information Has Been Redacted**

might be gained as a result of the Air Force's overall Performance confidence assessment of "Satisfactory Confidence" for GE Inspection Technologies. And this is an Air Force overall Performance confidence assessment for GE Inspection Technologies not different than the Air Force's overall Performance confidence assessment for the third Offeror, also a manufacturer of commercial off-the-shelf handheld, lightweight microprocessor-based ultrasonic flaw detectors.

Look at B-298697, *Matter of HoveCo*, November 14th, 2006, *2006 U.S. Comp. Gen. LEXIS 189, *6-*7*. This was an Air Force procurement of a trailer-mounted fuel dispensing system, an Air Force procurement with the same elaborate Air Force scheme to rank "relevant" Performance and then to assess the Air Force's overall confidence in "relevant" Performance. *Id., 2006 U.S. Comp. Gen. LEXIS*, at *2. HoveCo lacked "relevant" Performance and while HoveCo should have received there the Air Force overall Performance confidence assessment of "Unknown Confidence" that Precision Images should have here received, HoveCo in fact received there the same Air Force overall Performance confidence assessment of "Little Confidence" that Precision Images received here. *Id., 2006 U.S. Comp. Gen. LEXIS*, at *5-*6.

The Comptroller General of the United States denied a Post-Award Procurement Protest filed by HoveCo, and he did so because that Air Force Best Value Trade-Off was *focused on specific advantages gained in dealing with a particular Offeror and not, as here, only on the difference* between an Air Force overall Performance confidence assessment of "Little Confidence" and an Air Force overall Performance confidence assessment of "Satisfactory Confidence:"

> In this connection, it is clear from the source selection decision document that the SSA considered Porter Manufacturing's proposal to be worth its higher price because Porter had demonstrated through its present and past performance that it had the capabilities and experience necessary to handle the requirement. In other words, the *SSA focused on the advantages associated with Porter's greater experience and not simply the difference between the two offerors' performance confidence ratings* in selecting Porter's proposal as representing a better value to the government.

*Id., 2006 U.S. Comp. Gen. LEXIS*, at *6-*7 (Emphasis added).

This Air Force Contracting Officer tells us nothing in her Best Value Trade-Off about any specific advantages to be gained in dealing with GE Inspection Technologies, and we have not a clue from her paper about just how much this Award to GE Inspection Technologies, in lieu of an Award to Precision Images, is going to cost the taxpayers. It does not matter that the Air Force Performance Confidence Assessment Group identifies specific advantages to be gained from dealing with GE Inspection Technologies, this as the Intervenor has pointed-out. Intervenor's Memorandum in Support of Defendant's Cross-Motion for Judgment on the Administrative Record and in Opposition to Plaintiff's Cross-Motion, October 19th, 2007, at 5-6. The Air Force Performance Confidence Assessment Group is not also the Air Force Contracting Officer.

What does matter is this Air Force Contracting Officer's objective manifestation of her Best Value Trade-Off. And the objective manifestation by this Air Force Contracting Officer is entirely lacking. The standard here is an objective standard, not a subjective standard. What is missing is an affirmative determination by this Air Force Contracting Officer that there are specific advantages (and these advantages must be precisely identified) to be gained with an Award to GE Inspection Technol-

ogies and what is missing is an affirmative determination by this Air Force Contracting Officer that these specific advantages are worth paying a Price premium of [redacted], a Price premium of some [redacted] percent over the proposed Contract term of five years. *Impresa Construzioni Geom. Domenico Garufi v. United States*, 52 Fed. Cl. 421, 427-28 (2002), on remand from *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001).

**II. A Re-Opened Competition Would Be An Improper Remedy.**

The Air Force has invited these three Offerors to expose their prices for commercial off-the-shelf handheld, lightweight microprocessor-based ultrasonic flaw detectors, prices for a very large number of these devices to be delivered under a proposed Contract with a term of five years. One of these three Offerors, Precision Images, has announced in the Cover Letter for Precision Images' Competitive Proposal that Precision Images is a distributor, not a manufacturer, of commercial off-the-shelf handheld, lightweight microprocessor-based ultrasonic flaw detectors. Under the clear terms of this Solicitation, terms drafted only by the Air Force, the Air Force thus has known since the very beginning of this Acquisition that Precision Images could properly receive an Air Force overall Performance confidence assessment no better than "Unknown Confidence."

But that did not happen here. Precision Images instead received an unlawful Air Force overall Performance confidence assessment of "Little Confidence."

**Protected Information Has Been Redacted**

The Air Force Contracting Officer's Best Value Trade-Off which relies on this unlawful Air Force overall Performance confidence assessment of "Little Confidence" is an obvious violation of 41 U.S.C. § 405(j)(2) and its implementation at Federal Acquisition Regulation 15.305(a)(2). This Air Force Contracting Officer's Best Value Trade-Off is arbitrary and capricious in violation of 5 U.S.C. § 706(2)(A), and this Air Force Contracting Officer's Best Value Trade Off is likewise a violation of 10 U.S.C. § 2305(b)(4)(C) because an Award under this Solicitation on the Competitive Proposal from GE Inspection Technologies is not the most advantageous bargain for the United States.

That said, this litany of violations of Procurement statute and regulation should not compel a re-opened Acquisition, and now giving these Offerors an opportunity to revise their Prices would be unfair. How so? Simple. Manufacturers, not distributors, are the ones who set prices for commercial off-the-shelf products. When this Court properly Orders the termination of Contract Number FA8533-07-D-0011 thereby allowing a re-opened Acquisition and giving these two manufacturers an opportunity to cut their Prices now before the Air Force, such an unbridled remedy would unfairly prejudice Precision Images because Precision Images is a distributor, not a manufacturer, and as a distributor Precision Images cannot set prices for commercial off-the-shelf handheld, lightweight microprocessor-based ultrasonic flaw detectors.

It is the Air Force, and not Precision Images, and not GE Inspection Technologies, and not the un-named third Offeror, which is at fault here. A remedy for these Air Force violations of

Procurement statute and regulation should not burden Precision Images while at the same time benefiting GE Inspection Technologies and the un-named third Offeror.

A proper remedy will be for this Court to Order the Air Force to Award to Precision Images the proposed Contract for commercial off-the-shelf handheld, lightweight microprocessor-based ultrasonic flaw detectors. Short of such a directed Award, this Court could Declare that the only Competitive Proposal which may be selected for Award of the Contract proposed by Solicitation Number FA8533-07-R-11523 is the Competitive Proposal submitted by Precision Images, *Sperry Corp.; Sysorex Information Systems, Inc.; M/A-Com Information Systems, Inc.*, GSBCA Nos. 8208-P, 8210-P, & 8266-P, January 23rd, 1986, 1986 GSBCA LEXIS 711, *119-*120, and at the same time, should the Air Force elect to cancel Solicitation Number FA8533-07-R-11523 rather than proceed with an Award to Precision Images, this Court could Order that the Air Force is to terminate this Joint Service program for the supply of commercial off-the-shelf handheld, lightweight microprocessor-based ultrasonic flaw detectors.

Respectfully submitted,

/s/ Cyrus E. Phillips, IV

Cyrus E. Phillips, IV

District of Columbia Bar Number 456500,
Virginia State Bar Number 03135

October 29th, 2007

**Protected Information Has Been Redacted**

1828 L Street, N.W., Suite 660
Washington, D.C. 20036-5112

Telephone: (202) 466-7008
Facsimile: (202) 466-7009
Electronic Mail: lawyer@procurement-lawyer.com

Attorney of record for Plaintiff,
Precision Images, LLC.

## CERTIFICATE OF SERVICE

I hereby certify, under penalty of perjury, that on Monday, October 29th, 2007 a true and complete copy of this Plaintiff's Brief in Reply to Response to Cross-Motion for Judgment on the Administrative Record was filed electronically via the Court's Electronic Case Filing System, through which notice of this filing will be sent to:

Joseph E. Ashman, Esq.

Electronic Mail: Joseph.Ashman@usdoj.gov

Attorney of record for Defendant,
Department of the Air Force, Air Force
Materiel Command.

I also certify, under penalty of perjury, that on Monday, October 29th, 2007 a true and complete copy of this Plaintiff's Brief in Reply to Response to Cross-Motion for Judgment on the Administrative Record was filed electronically via the Court's Electronic Case Filing System, through which notice of this filing will be sent to:

David A. Churchill, Esq.

Electronic Mail: dchurchill@jenner.com

Attorney of record for Intervenor,
GE Inspection Technologies, LP.

/s/ Cyrus E. Phillips, IV

______________________________
Cyrus E. Phillips, IV